AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
for the
District of South Carolina

In the Matter of the Seizure of )
*(Briefly describe the property to be seized)* )
Funds not to exceed $351,000.00 in wallets at ) Case No. 2:22-cr-608
Binance Holdings Limited as described in the June )
6, 2022 Affidavit of TFO James Jackson )

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____ District of _____ is subject to forfeiture to the United States of America under __18__ U.S.C. § __981(a)(1)(C)__ *(describe the property)*:

Funds not to exceed $351,000.00 in awallets at Binance Holdings Limited. Jurisdiction in the District of South Carolina is proper pursuant to 18 U.S.C. § 981(b)(3) because a seizure warrant may be issued pursuant to this subsection by a judicial officer in any district in which a forfeiture action against the property may be filed.

The application is based on these facts:

See Attached Affidavit dated June 6, 2022 of TFO James Jackson.

☐ Continued on the attached sheet.

*James G. Jackson*
*Applicant's signature*

TFO James Jackson
*Printed name and title*

Sworn to me via telephone or other reliable electronic means
and signed by me pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3).

Date: 06/06/2022

*Mary Gordon Baker*
*Judge's signature*

City and state: Charleston, South Carolina

The Honorable Mary Gordon Baker
*Printed name and title*

Print    Save As...    Attach    Reset

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEIZURE OF ALL FUNDS, MONIES, AND OTHER THINGS OF VALUE NOT TO EXCEED $351,000.00 STORED IN OR ACCESSIBLE AT BINANCE HOLDINGS LIMITED ASSOCIATED WITH THE FOLLOWING WALLETS:<br><br>0xa01decf8281f072ad7d08f7bcd966077a3e26446<br><br>0xccf1f528b8ffac1cc0183c6ead2120e749a4b28<br><br>0x5fa1cee2b2b20ae16ef4f6dfaa4511b2eb9d46b<br><br>0x16823b7aadc4aaddcef979795de5ab7fcd98ed9b | Case No. 2:22-cr-608 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEIZURE WARRANT**

I, Task Force Officer James Jackson, your Affiant, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I have been employed by the Charleston Police Department since February 2009 and currently assigned as a Task Force Officer with United States Secret Service (USSS) since July 2019. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct investigations and make arrests of offenses enumerated in Title 18, United States Code, Section 2516. I have completed the SC Criminal Justice Academy and attended numerous trainings involving financial related crimes including crimes involving cryptocurrency. I have been involved in and assisted in numerous seizures of cryptocurrency.

2. I am submitting this affidavit in support of an application which seeks the issuance of a federal seizure warrant authorizing agents of the United States Secret Service who are involved in the investigation, more particularly described below, to seize the below described wallets:

**All monies, funds, and things of value at Cryptocurrency Exchange Binance Holdings Limited, not to exceed $351,000.00, held in the following Binance wallets:**

    i.    0xa01decf8281f072ad7d08f7bcd966077a3e26446
    ii.    0xccf1f528b8ffac1cc0183c6ead2120e749a4b28
    iii.    0x5fa1cee2b2b20ae16ef4f6dfaa4511b2eb9d46b
    iv.    0x16823b7aadc4aaddcef979795de5ab7fcd98ed9b

**Hereinafter referred to as the "Cryptocurrency Wallets".**

3. Your Affiant has probable cause to believe that the funds in the Cryptocurrency Wallets, described above, are unlawful proceeds of violations relating to Title 18 U.S.C. § 1343 (Wire Fraud) and are thereby subject to civil and criminal forfeiture pursuant to Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c). The funds described herein are also thereby subject to civil and criminal seizure pursuant to Title 18 U.S.C. § 981(b) and Title 21 U.S.C. § 853(e) and (f) by Title 18 U.S.C. § 982(b)(1).

4. This affidavit does not purport to set forth all my knowledge or investigation concerning this case. The statements contained in this affidavit are based on my personal knowledge or from information that I have learned during my investigation, including information from financial institutions, witnesses, and others participating in the investigation.

## BACKGROUND ON CRYPTOCURRENCY

5. Based on my training, research, education, and experience, I am familiar with the following relevant terms and definitions as they relate to cryptocurrency:

a. Cryptocurrency, a type of virtual currency, is a decentralized, peer-to peer, network-based medium of value or exchange that may be used as a substitute for fiat currency to buy goods or services or exchanged for fiat currency or other cryptocurrencies.[1] Examples of cryptocurrency are Bitcoin (BTC), Litecoin (LTC), Ethereum (ETH) and Tether (USDT). Cryptocurrency can exist digitally on the Internet, in an electronic storage device, or in cloud-based servers. Although not usually stored in any physical form, public and private keys (described below) used to transfer cryptocurrency from one person or place to another can be printed or written on a piece of paper or other tangible object. Cryptocurrency can be exchanged directly person to person, through a cryptocurrency exchange, or through other intermediaries. Generally, cryptocurrency is not issued by any government, bank, or company; it is instead generated and controlled through computer software operating on a decentralized peer-to-peer network. Most cryptocurrencies have a "blockchain," which is a distributed public ledger, run by the decentralized network, containing an immutable and historical record of every transaction.[2] Cryptocurrency is not illegal in the United States.

b. Tether (USDT) and Ethereum (ETH) is a type of cryptocurrency like Bitcoin[3] ("BTC").

---

[1] Fiat currency is currency issued and regulated by a government such as the U.S. Dollar, Euro, or Japanese Yen.

[2] Some cryptocurrencies operate on blockchains that are not public and operate in such a way to obfuscate transactions, making it difficult to trace or attribute transactions.

[3] Since Bitcoin is both a cryptocurrency and a protocol, capitalization differs. Accepted practice is to use "Bitcoin" (singular with an uppercase letter B) to label the protocol, software, and

3

    c. Cryptocurrency is stored in a virtual account called a wallet. Wallets are software programs that interface with blockchains and generate and/or store public and private keys used to send and receive cryptocurrency. A public key or address is akin to a bank account number, and a private key is akin to a PIN number or password that allows a user the ability to access and transfer value associated with the public address or key. To conduct transactions on a blockchain, an individual must use the public address (or "public key") and the private address (or "private key"). A public address is represented as a case-sensitive string of letters and numbers, 26–36 characters long. Each public address is controlled and/or accessed through the use of a unique corresponding private key—the cryptographic equivalent of a password or PIN—needed to access the address. Only the holder of an address' private key can authorize any transfers of cryptocurrency from that address to another cryptocurrency address.

    d. Although cryptocurrencies such as Bitcoin, Ethereum and Tether have legitimate uses, cryptocurrency is also used by individuals and organizations for criminal purposes such as money laundering and is often used as payment for illegal goods and services. By maintaining multiple wallets, those who use cryptocurrency for illicit purposes can attempt to thwart law enforcement's efforts to track transactions.

---

community, and "bitcoin" (with a lowercase letter b) to label units of the cryptocurrency. That practice is adopted here.

4

e. As of June 2, 2022, one ETH is worth approximately $1,937.01 and one BTC is worth approximately $30,214.60, though the value of ETH and BTC is generally much more volatile than that of fiat currencies. USDT value is directly tied to the value of the US Dollar and is traded on the ETH blockchain.

f. Exchangers and users of cryptocurrencies store and transact their cryptocurrency in a number of ways, as wallet software can be housed in a variety of forms, including on a tangible, external device ("hardware wallet"), downloaded on a PC or laptop ("desktop wallet"), with an Internet-based cloud storage provider ("online wallet"), as a mobile application on a smartphone or tablet ("mobile wallet"), printed public and private keys ("paper wallet"), and as an online account associated with a cryptocurrency exchange. Because these desktop, mobile, and online wallets are electronic in nature, they are located on mobile devices (e.g., smart phones or tablets) or at websites that users can access via a computer, smart phone, or any device that can search the Internet. Moreover, hardware wallets are located on some type of external or removable media device, such as a USB thumb drive or other commercially available device designed to store cryptocurrency (e.g. Trezor, Keepkey, or Nano Ledger). In addition, paper wallets contain an address and a QR code[4] with the public and private key embedded in the code. Paper wallet keys are not stored digitally. Wallets can also be backed up into, for example, paper printouts, USB drives, or CDs, and accessed through a "recovery seed" (random words strung

---

[4] A QR code is a matrix barcode that is a machine-readable optical label.

together in a phrase) or a complex password. Additional security safeguards for cryptocurrency wallets can include two-factor authorization (such as a password and a phrase). I also know that individuals possessing cryptocurrencies often have safeguards in place to ensure that their cryptocurrencies become further secured in the event that their assets become potentially vulnerable to seizure and/or unauthorized transfer.

g. Cryptocurrency "exchangers" and "exchanges" are individuals or companies that exchange bitcoin for other currencies and cryptocurrencies, including U.S. dollars and tether. According to Department of Treasury, Financial Crimes Enforcement Network ("FinCEN") Guidance issued on March 18, 2013, virtual currency administrators and exchangers, including an individual exchanger operating as a business, are considered money services businesses.[5] Such exchanges and exchangers are required to register with FinCEN and have proper state licenses (if required under applicable state law). From my training and experience, I know that registered money transmitters are required by law to follow Bank Secrecy Act anti-money laundering ("AML") regulations, "Know Your Customer" ("KYC") protocols, and other verification procedures similar to those employed by traditional financial institutions. For example, FinCEN-registered cryptocurrency exchangers often require customers who want to open or maintain accounts on their exchange to provide their name, address, phone number, and the full bank account and routing numbers that the

---

[5] *See* "Application of FinCEN's Regulations to Person Administering, Exchanging, or Using Virtual Currencies," *available at* https://www.fincen.gov/resources/statutes-regulations/guiadance/application-fincens-regulations-persons-administering.

6

customer links to an exchange account. As a result, there is significant market demand for illicit cryptocurrency-for-fiat currency exchangers, who lack AML or KYC protocols and often also advertise their ability to offer customers stealth and anonymity. These illicit exchangers routinely exchange fiat currency for cryptocurrencies by meeting customers in person or by shipping cash through the mail. Due to the illicit nature of these transactions and their customers' desire for anonymity, such exchangers are frequently able to charge a higher exchange fee, often as high as 9–10% (in contrast to registered and BSA-compliant exchangers, who may charge fees as low as 1–2%).

h. Binance Holdings Limited is a Cryptocurrency exchange and custodian that allows users to buy, sell and store digital assets. They hold a Money Service Business Registration in the United States. Their registration shows an address of Level 3, Melita Court, Triq Giuseppe Cali, Ta'Xbiex XBX 1420, Malta.

i. Some companies offer cryptocurrency wallet services which allow users to download a digital wallet application onto their smart phone or other digital device. A user typically accesses the wallet application by inputting a user-generated PIN code or password. Users can store, receive, and transfer cryptocurrencies via the application; however, many of these companies do not store or otherwise have access to their users' funds or the private keys that are necessary to access users' wallet applications. Rather, the private keys are stored on the device on which the wallet application is installed (or any digital or physical backup private key that the user creates). As a result, these companies generally cannot assist in seizing or otherwise restraining their

users' cryptocurrency. Nevertheless, law enforcement could seize cryptocurrency from the user's wallet directly, such as by accessing the user's smart phone, accessing the wallet application, and transferring the cryptocurrency therein to a law enforcement-controlled wallet. Alternatively, where law enforcement has obtained the recovery seed for a wallet (see above), law enforcement may be able to use the recovery seed phrase to recover or reconstitute the wallet on a different digital device and subsequently transfer cryptocurrencies held within the new wallet to a law enforcement-controlled wallet.

## **FACTS SUPPORTING PROBABLE CAUSE**

6.  On May 31, 2022, Irene Cheng (CHENG) filed a report with the City of Charleston Police Department (CPD), which detailed how her mother/victim, Sai Huang (HUANG), was scammed out of $351,000.00 via several cryptocurrency transactions. Mrs. Cheng stated the unknown actors developed a relationship with her mother via online communication. CHENG advised HUANG has early on-set dementia and multiple sclerosis.

7.  On April 17, 2022, HUANG received a text message to her phone from an unknown individual who identified himself as "Burt" asking if she spoke Chinese and if they could be friends. The two continued to communicate and "Burt" befriended the victim, and he offered to become her financial adviser. "Burt" eventually convinced HUANG to download Crypto.com on April 20, 2022 and created an account.

8.  Crypto.com is an online cryptocurrency exchange that allows users to purchase and exchange over 250 different types of cryptocurrencies and over 20 types of fiat currency. Crypto.com is located in Miami, FL.

9. Between April 20, 2022 and April 27, 2022, HUANG attempted several wire transfers between her accounts at the direction of "Burt". HUANG was successful in moving $8,000 from a First Citizens account she controls into the account she created at Crypto.com

10. Law enforcement officers and agents recognize this fraud scheme as a common pretense of tricking a victim to send money to a bank account of the choosing of the bad actor. This transferring of funds based on the online fraud scheme, is a violation of the federal Wire Fraud statute, 18 U.S.C. § 1343 and/or the federal Wire Fraud Conspiracy Statute 18 U.S.C. § 1349.

11. On April 27, 2022, HUANG purchased $7,972.46 (hereinafter "Transfer 1") in Ethereum that was sent to the following wallet held at Binance:

   a. 0xc009f900cd6d2fe42940c0392ebc230b2603be7f
   b. Confirmed via hash value: 0x9e0f8480b33497021b78703bbc8fec019ba42138d02ff12b0dff3367c7bba5fe

12. On May 3, 2022, HUANG wired $8,000.00 from TD Bank into the account she created at Crypto.com.

13. On May 4, 2022, HUANG made another purchase of $7,994.26 (hereinafter "Transfer 2") worth of Ethereum that was sent to the following wallet held at Binance:

   a. 0xc009f900cd6d2fe42940c0392ebc230b2603be7f
   b. Confirmed via hash value: 0x5b063971e3fb2286b846c44d952e2da580c3740126d8049a60c004cdaf486dab

14. On May 10, 2022, HUANG wired $35,000.00 from First Citizens Bank into the account she created Crytpo.com.

15. On May 11, 2022, HUANG made another purchase of $34,864.00 (hereinafter "Transfer 3") of Ethereum that was sent to the following wallet held at Binance:

   a. 0xc009f900cd6d2fe42940c0392ebc230b2603be7f
   b. Confirmed via hash value: 0x678223f09ae65d54f2416f2285509a794bb6f28597c174f9a640099e884176d2

16. On May 20, 2022, HUANG wired $300,000.00 from a Wells Fargo account she controls into the account she created Crypto.com and made purchases of Ethereum totaling $300,028.21 (hereinafter "Transfer 4") that was sent to the wallet 0x49bdd93ae9045da6d46439c2efb79ceccc04e483 held at Binance in two separate transactions:

   a. Confirmed via hash value: 0xc22516f781b2cb44d4e14d4fff5921890f0eaf86113297a8eed0026d78678dd7
   b. Confirmed via hash value: 0x250c120293280cacfd41bb2a245bfdd3cb6c996a759b116b7bbb5f0476739367

17. On or after May 20, 2022, HUANG requested "Burt" to return all of the monies she had transferred to Crypto.com back to her, and he refused to do so.

18. On June 1, 2022, your Affiant sent the above wallet addresses identified in Paragraphs 11(a), 13(a), 15(a), and 16(a) to the Money Hunting Team in the Global Investigations Operations Center, located within the U.S. Secret Service Criminal Investigative Division, who was able to locate wallets with Binance Holdings Limited.

19. Richard MaGill (USSS) was able to trace the transactions across the blockchain and provided the following tracing:

   a. HUANG's Transfer 1, Transfer 2, and Transfer 3 were sent, either initially or via transfers to Binance wallet 0xc009f900cd6d2fe42940c0392ebc230b2603be7f (be7f).

10

      i. be7f sent funds to wallet 0x7b39918c049fd199a1c591e023ac7491ae5e4d18 (4d18) which then used imToken application to convert the ETH to USDT.

      ii. 4d18 sent funds to wallet 0x5da22aecb18b7d4c957d4acba61457c3449c53b0 (53b0) which then used imToken application to convert those funds to USDT.

      iii. Wallets 4d18 and 53b0 then sent the USDT out where it went through several different transactions and was comingled, including going through wallet 7424 described below, with other funds, but ultimately ended up at wallet 0x0999d095dfa07b3481ecc92c4081db25251dbde3 (bde3).

      iv. The funds were then further comingled and distributed to other wallets before ending up at the following Binance wallets, which are two of the **Cryptocurrency Wallets** sought to be seized:

          1. 0xa01decf8281f072ad7d08f7bcd966077a3e26446
          2. 0xccf1f528b8ffac1cc0183c6ead212d0e749a4b28

b. HUANG's Transfer 4 was sent to wallet 0x49bdd93ae9045da6d46439c2efb79ceccc04e483 (e483).

      i. After several transactions, including going through be7f identified above, the funds went to 0x5da22aecb18b7d4c957d4acba61457c3449c53b0 (53b0).

      ii. Wallet 53b0 converted the ETH to USDT using imToken and sent the funds to 0x44e3ab9eaf303ffd28850eeb2348cee675ab7424 (7424).

      iii. Wallet 7424 send the funds to bde3 before the funds were comingled and ended up at the following Binance wallets, which are three of the **Cryptocurrency Wallets** sought to be seized:

          1. 0x5fa1cee62b2b20ae16ef4f6dfaa4511b2eb9d46b
          2. 0xccf1f528b8ffac1cc0183c6ead212d0e749a4b28
          3. 0x16823b7aadc4aaddcef979795de5ab7fcd98ed9b

20.     Continuing on June 1, 2022, your Affiant and SA Michael Strobl (US Secret Service) requested the account information for the above accounts number from the investigative team at Binance Holdings Limited.

21.     Continuing on June 1, 2022, your Affiant received an email from Renato Bastos, an investigator with Binance Holdings Limited. Bastos confirmed the above listed wallets were held on the Binance Exchange. Bastos also advised they have frozen any funds in the accounts for seven (7) days.

22.     Cryptocurrency investigators explained that converting Ethereum to USDT is a common behavior within these schemes.

23.     On Friday, June 2, 2022, the Binance financial case team provided information to your Affiant and SA Strobl with all information regarding the **Cryptocurrency Wallets**. The wallets contain the following equivalent in US Dollars:

   a. Binance Wallet: 0xa01decf8281f072ad7d08f7bcd966077a3e26446
      i. Contains no funds

   b. Binance Wallet: 0xccf1f528b8ffac1cc0183c6ead2120e749a4b28
      i. 252 ETH = approximately $457,764.08
      ii. 1016800.55115752 USDT = approximately $1,016,800.55

   c. Binance Wallet: 0x5fa1cee2b2b20ae16ef4f6dfaa4511b2eb9d46b
      i. $86,713.60 in Bella Protocol

   d. Binance Wallet: 0x16823b7aadc4aaddcef979795de5ab7fcd98ed9b
      i. 61308.00000000 USDT = approximately $61,308.00

### BINANCE HOLDINGS LIMITED ACCOUNT

24. The Binance Holdings Limited wallet numbers in question are

    a. 0xa01decf8281f072ad7d08f7bcd966077a3e26446

    b. 0xccf1f528b8ffac1cc0183c6ead212d0e749a4b28

    c. 0x5fa1cee62b2b20ae16ef4f6dfaa4511b2eb9d46b

    d. 0x16823b7aadc4aaddcef979795de5ab7fcd98ed9b

25. The account value of each wallet, which has been frozen by Binance, is currently known and set forth above in Paragraph 23 and its subparts.

26. The amount seized shall not exceed the equivalent value of $351,000.00, which is the value lost by HUANG as a result of the fraud scheme described herein.

### JURISDICTION TO ISSUE OUT-OF-DISTRICT WARRANT

27. Though the **Cryptocurrency Wallets** described herein are believed to be located outside the District of South Carolina, 18 U.S.C. § 981(b)(3), as amended by the Civil Asset Forfeiture Act of 2000 ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202 (2000), explicitly provides jurisdiction for the issuance of seizure warrants for property located in other districts. This statute provides as follows:

28. Notwithstanding the provisions of Rule 41(a) of the Federal Rules of Criminal Procedure, a seizure warrant may be issued pursuant to this subsection by a judicial officer in any district in which a forfeiture action against the property may be filed under section 1335(b) or Title 28, and may be executed in any district in which the property is found …

29. Thus, the issuance of the seizure warrant in this district is appropriate under the above statute, as this is the district "in which … the acts or omissions giving rise to the forfeiture occurred," based on my training and experience, this is a continuance of a "romance scam" that

began with the original victim who is based in Charleston, SC. Further, "venue for the forfeiture action . . . is specifically provided for in section 1395 . . .". 28 U.S.C. § 1355(b)(1)(A) and (B). Section 1395 provides "for the recovery of a . . . forfeiture . . . in the district where it accrues . . .".

## CONCLUSION

30.	I submit that this affidavit supports probable cause for a warrant to seize all funds, monies, and other things of value up to $351,000.00 US Dollars stored in or accessible in the **Cryptocurrency Wallets.**

31.	Based upon the foregoing facts and upon Affiant's training and experience, there is probable cause to believe that the funds in the Cryptocurrency Accounts are proceeds traceable to violations of Title 18 U.S.C. § 1343 and subject to civil and criminal forfeiture to the United States pursuant to Title 18 U.S.C. § 981(a)(1)(C) made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c); and are thereby also subject to seizure pursuant to Title 18 U.S.C. § 981(b) and Title 21 U.S.C. § 853(e) and (f) by Title 18 U.S.C. § 982(b)(1).

32.	The issuance of the seizure warrant in this district is appropriate under Title 18 U.S.C. § 981(b)(3), and Title 28 U.S.C. § 1355(b)(1) because, notwithstanding the provisions of Rule 41(a) of the Federal Rules of Criminal Procedure, a seizure warrant may be issued by a judicial officer in any district in which a forfeiture action against the property may be filed.

33.	Further, a restraining order would not be adequate to preserve the property for forfeiture as the funds in the Cryptocurrency Accounts can be easily moved, transferred, or dissipated.

34.	THEREFORE, your Affiant respectfully requests the issuance of a seizure warrant that will authorize the seizure of funds contained in the Cryptocurrency Accounts described herein.

35.	This affidavit has been reviewed by AUSA Amy Bower.

Respectfully submitted,

*James G. Jackson*
James Jackson, Task Force Officer
United States Secret Service

Sworn to me via telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) or 41(d)(3), as applicable on this 6th day of June 2022

_____
The Honorable Mary Gordon Baker
United States Magistrate Judge

15